Thank you. We'll hear argument now in the case of McClain v. Reynolds. Mrs. Rowe. Good morning. May it please the court. I apologize. Let me know if you can't hear me. I've got a cold this morning. My name is Crystal Rowe and I represent the officers in this case. And this appeal is very limited in scope. This court has appellate jurisdiction under the collateral order doctrine. That doctrine basically says that... We need to discuss that for a little while. Are you accepting the district court's summary of what the evidence would permit a jury to find? I am. As facts, yes. We are arguing only on the legal... Your brief does not... summarizes the evidence in a way very different from the way the district court did. Under Johnson v. Jones, we're not allowed to look behind the district court's rulings about what evidence a jury could find. Our brief was focused on the officer's knowledge. There's only three officers. The district court's factual findings dealt with everybody in this case. There are a lot of defendants. We believe that the qualified immunity doctrine, you have to know what the knowledge of our officers... I understand that. But the critical question is whether you unconditionally accept what the district court said a jury could find. For purposes of today, yes, we do. Thank you. We still think the focus needs to be on the officers themselves in the qualified immunity doctrine. And to us, the legal question here has to do with what the district court found as what's clearly established law. And that would be the medical right of Ms. Chappell to have someone other than an LPN look at this. Here, in this case, it's undisputed that the nurse was involved throughout this case. In fact, before the three officers at issue in this appeal, the nurse was involved before they ever got involved and was ordering directions. The nurse ordered Officer Davison to take the temperature of Ms. Chappell. He complied. The nurse, when something was happening, they would report to Ms. Chappell. Now, there was an instance in the trial court's findings where the trial court believes that there was an issue of fact regarding whether the reports were enough. Especially, she focuses specifically on the afternoon where Ms. Chappell fell on the bunk and it was unclear at first as to whether she had hit her head. And the court focused on that as being, that should have been reported to the nurse immediately. But the trial court's legal analysis is that, hey, a jury could determine that the officers are entitled to qualified immunity. But the jury could also determine that an LPN really isn't sufficiently credentialed to have diagnosed or treated. And to us, the established law that the court was relying upon comes from the Dobby or Doby case. And in that case, I'm sorry if I mispronounced it, but in that case, the court actually said that was the dental abscess tooth case. And in that case, the court says, you know, these officers didn't report to anybody. They could have reported to even the pharmacist, the prison pharmacist. They could have reported to the medical technician. I mean, these people would not have the ability to diagnose and treat this dental abscess. But that was sufficient for the Dobby case. The problem in that case is the officers in that case didn't do that. Our officers did. They reported to Nursery 10. They, you know, when they saw her stumbling and falling, they took it upon themselves to change her to a different holding cell. Ms. Rowe, what about the district court's holding that the fact that, at least in the district court's mind, a jury could conclude based on this evidence that Officer Reynolds had reason to know that the nurse was failing to treat or adequately treat Ms. Chappell, making his deference to Rutan unreasonable and indefensible, quoting Miranda. So basically, as I understand it, there's testimony from Officer Reynolds and the other officers that, you know, in certain situations they had to alert or they had to get medical treatment for an inmate, and also some testimony that Nurse Rutan would sometimes perhaps not take complaints from inmates regarding their pain as seriously as and had a reputation for maybe discounting some of those statements. And it was based upon this that district court said, well, yeah, but, you know, a jury could find that Reynolds, based upon all this information, knew that whatever Nurse Rutan was doing was not enough. How is your characterization of the facts now not contrary to that district court holding? The intent was not to be contrary. The intent was to, of the facts, and I apologize if it didn't come out that way, but the intent was to focus on what these officers knew at the time because, to me, when I looked at the case, all the facts were in the aggregate of what all these different people knew. And in Miranda, they talk about how, you know, these are departments and, you know, you divide up the labor, so to speak, and if you're looking. And the first thing I would say in response to that is with Detective, with Officer Reynolds, that does not include Officer Davison's and Officer Stilwell. So that's one. And two, the impression I got from reading, you know, my take from reading the court's opinion or the district court's opinion was that it was when Officer Reynolds, the reason she focused on Officer Reynolds is because he had reported about the sickle cell disease. And then he said, well, it's not really sickle cell symptoms. And I think that almost puts a level on the officers who are not trained, medically trained, to second guess the medical professional that they are reporting to. And that's the reason I think it's distinguishable in that respect. Another issue here is a legal issue of waiver. You know, there were three briefs filed by the opposing side at the summary judgment stage. Not one dealt with qualified immunity. The district court acknowledges this, but says, well, they did cite case law predating 2021. But the case law, that is too general of a standard in our view. And I think our brief sets that out. I would like to reserve my time for rebuttal, if that's OK. Certainly, Ms. Rowe. Thank you. Mr. Aguiar. Good morning. May it please the court. Sam Aguiar here on behalf of Levina McLean and the estate of Tanisha Chappell. As was summarized, there's there's two main issues that appear to be addressed here. We've got the waiver issue. Certainly, as counsel, it's no fun to be standing up here and to have to basically defend my own pleadings and whether or not I adequately address qualified immunity. I do appreciate the district court's holding that this was this was complicated. We're dealing with 12 different officers. A lot of the arguments are intertwined. Certainly, we believe that we met our burden of citing a line of authority. Is it related to what was clearly established law that these officers knew on July 16th, 2021? What is the source of the clearly established law that you see? Well, there's there's two different lines of clearly established law that are applicable to this case. One is that officers, plain and simple, have to provide access. You know, when I ask you for the source of clearly established law, I'm asking you for a citation, not for your description of what you think the law is. OK. Well, I have to refer to the footnotes in the brief, but there's certainly the there's the Gaten case. There's Miranda. There's one reason I'm asking this is because it is an open question which the Supreme Court is inviting people to address. Whether the law must be clearly established by decisions of the Supreme Court. Whether law gets clearly established when an inferior court says something. Are you relying on any particular decisions of the Supreme Court of the United States Supreme Court? That's what we usually call the Supreme Court. The question of medical care is addressed by the United States Supreme Court dating back to the 1980s. And dating back to the 1980s. I'm asking you for concrete citations, not decades. As I sit here right now, I cannot recall the name of the case. I apologize. Well, this is not the case to broach that because it hasn't been raised by either party. But the Supreme Court of the United States obviously wants us to be thinking about it. And it's surprising to get a qualified immunity appeal in which no one pays any attention to this question. Anyway, please proceed. We believe that clearly established law was raised adequately, not perfectly. And certainly it was relied upon by the district court properly. Albeit with the judge acknowledging that we could have done a better job articulating it within a specific context. As it relates to the factual issues, even as I sit here today and hear what's being said, it conflicts and contrasts with the record evidence, the facts that we presented, and the facts that were accepted by the district court. Two of these three officers in particular made no reference at all to going to the nurse to try to report any sort of problems. These three officers were literally tasked with observing Tanisha Chappell on camera for hours. And the record evidence shows that they watched her deteriorate and ultimately she died. The nurse himself, when deposed, disagrees that Officer Reynolds came to him and expressed any sort of issues that needed to be addressed. So it's our position that for the court to accept jurisdiction in this case, it is going to inherently have to accept facts that are being presented now that differ greatly from what the record shows and what the underlying court found. I know that I have ten minutes up here. I'm happy to answer any questions. But as it relates to the facts, all I can say is that they're different. And if the court wants to go to the merits, we can certainly do that. I'm happy to answer any questions from any of you. So I take it you're – so Ms. Rowe would like us to focus on what the officers knew and what the officers did from their point of view. I take it your argument is that given that Nurse Rutan seems to contradict some of their statements of what they reported, that a jury should be able to weigh both sides of that equation. Yes, Judge. And I think that a jury could also look at the three to four hours of video footage where we see, thankfully, Officer Reynolds and Officer Davidson together, as well as Officer Stilwell in a separate sector of the jail, side by side with what is going on with Tanisha Chappell. They're observing the video. They're going to be able to conclude that she is getting worse rapidly and that there are no efforts being made. I must say, counsel, if the problem in this case is that the three appellants were medically incompetent, what makes you think a jury is medically competent? Right? The question is not what lay people think by looking into the cell, but what we know from a medical professional. The standard is objective reasonableness, and I think a jury is entitled to judge what is objectively reasonable. I don't think we take that view in medical malpractice cases. Why would we take that view in constitutional court litigation? Because in a medical malpractice case, we're scrutinizing it from the perspective of a doctor. Here, we're scrutinizing it from the perspective of an objectively reasonable officer. Do you have some law saying it's clearly established that you're supposed to apply a lay juror's perspective to the medical competence of prison guards? What clearly establishes that? I'm sorry. That a jury is allowed to? That we are supposed to apply a lay perspective to the medical assessments of prison guards. I don't know if we have that. No. I'm not acquainted with such a case. I didn't see it in the briefs. We do have correctional experts that come in and discuss training, reasonable behavior, objectively reasonable behavior based upon training. The record in this case is going to show what these officers were trained. A jury is going to be able to analyze that. And if I'm clear, for example, you pointed us to Miranda, our case, because you're talking about seven circuit cases at this point. We do have law that a correctional officer can't defer to a medical professional if she knows or has reasonable belief that the medical professional is not providing care for an inmate. That's correct. And that, you know, if a guard is writhing in agony, a prison guard, if a prisoner is in agony, a guard can't ignore on the ground not being a doctor or not making an effort to find a doctor, so forth, so on. That's correct, Judge. We've also cited to the deposition testimony of the officers themselves that acknowledged that it was obvious that she needed to go to a hospital. That she was obviously suffering, and certainly we believe that a jury can take that into account as well. Thank you, Mr. Aguilar. Okay. Thank you, Judge. Anything further, Ms. Rowe? Real quickly. First thing I would say with respect to the facts in this case is that the Doctrine of Qualified Immunity shields government officials from civil liability unless the official violated a statutory or constitutional right that was clearly established. That is why I believe the focus is on what the officers knew and what their conduct was because that's what we're talking about is the Qualified Immunity Doctrine as to each of these officers individually. With respect to the two officers, you know, we heard that the two officers made no reference in the facts to going to the nurse. That would be Officers Davison and Officers Stilwell. But both of those came into the picture with the nurse. Officer Stilwell was directed by the nurse to take his temperature, so he knew the nurse was involved the entire time. Officer Stilwell, that was Officer Davison, sorry. Officer Stilwell went with the nurse the first time he saw her and saw the nurse interact. He saw her take Ms. Chappelle's blood pressure, etc. So they knew the officer. They were also hearing, you know, again, it's just the division of labor in this thing. With respect to the clearly established law, the cases that talk about, that Your Honor was talking about, with respect to, they're all talking about when the nurse is providing no care. There's no cases that talk, at least in the application, Miranda is the same, that talk about how the officer is supposed to somehow have better knowledge than the nurse, who is the medical professional under DAWBE, that would qualify as a medical professional. And that, I believe, is what the standard is being used here by the District Court, is that they should have known better than this nurse. And with no other questions, Your Honor, I thank you for your time. Thank you very much, Counsel. The Court will take a brief recess.